NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EVELYN MANOPLA, individually and on behalf of all other similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> RAYMOURS FURNITURE COMPANY, INC. d/b/a RAYMOUR & FLANIGAN, a division of 1st Source Bank, <br><br> Defendant. | Civil Action No.: 3:17-cv-7649-BRM-LHG <br><br><br><br> **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendant Raymour & Flanigan's ("Raymour") Motion to Transfer Venue to the United States District Court for the Northern District of New York. (ECF No. 11.) Plaintiff Evelyn Manopla ("Manopla") opposes the Motion. (ECF No. 15.) Having reviewed the parties' submissions submitted in connection with the motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Raymour's Motion is **GRANTED**.

I. **BACKGROUND**

Manopla alleges to have received a series of unwanted automated text messages from Raymour. (Compl. (ECF No. 1) ¶ 26.) The unsolicited messages were strictly commercial in nature and provided those who gave Raymour their cell phone number with updates about upcoming promotions and sweepstakes. (*See* ECF No. 1 ¶ 23.) According to each message, a recipient could stop the messages by texting "STOPRF" to the number sending the automated replies. (ECF No.

1 ¶ 26.) Manopla contends she properly followed the instructions to halt the messages, but Raymour continued to send promotional text messages for the next seven months. (ECF No. 1 ¶ 26.)

To be considered for a sweepstakes (the "Sweepstakes") Raymour was hosting and in which Manopla participated, customers had to fill out and properly submit an online form to Raymour. (Raymour's Br. in Supp. of Mot. to Transfer Venue (ECF No. 11-1) at 2.) When Manopla filled out the online form, she checked off two boxes. (*Id.*) These checked boxes indicated to Raymour that Manopla agreed "(1) to receive automated, promotional text messages to her cell phone from Raymour, and (2) to be bound by the Sweepstakes Official Rules" (the "Sweepstakes Agreement"). (*Id.*) The Sweepstakes Agreement could be accessed by two hyperlinks within the online form itself. (*See id.* at 3.) Both hyperlinks were featured on the same page. (*Id.*) Each hyperlink, if clicked, would send the user to the Sweepstakes Agreement, which contained a forum-selection clause. *See id*. The clause states "any and all disputes, claims and causes of action arising out of, or connected with, the Sweepstakes or any prize awarded shall be resolved individually, without resort to any form of class action, and exclusively by the appropriate court located in the state of New York." (*Id.* at 3-4.) Manopla argues she "would not have been able to submit her entry form and would not have been eligible to enter the Sweepstakes without checking the box indicating that she read and agreed to the Sweepstakes Agreement." (*Id.*)

On September 29, 2017, Manopla filed her class action complaint (*see* ECF No. 1), and on November 11, 2017, Raymour filed a Motion to Transfer the case to the Northern District of New York, based on the forum-selection clause stated in the Sweepstakes Agreement (*see* ECF No. 11-1 at 1.)

## II. LEGAL STANDARD

A motion to transfer venue is governed by 28 U.S.C. § 1404(a), which reads:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

Therefore, in deciding a motion to transfer, the Court must first determine whether the alternative forum is a proper venue. *Fernandes v. Deutsche Bank Nat'l Trust Co.*, 157 F. Supp. 3d 383, 389 (D.N.J. 2015); *see* 28 U.S.C. § 1391. When a plaintiff has laid a proper venue, "[t]he decision whether to transfer falls in the sound discretion of the trial court." *Park Inn Int'l, L.L.C. v. Mody Enters., Inc.*, 105 F. Supp. 2d 370, 377 (D.N.J. 2000). In exercising this discretion and ruling on such a motion, courts implement a balancing test and take into account the factors enumerated in § 1404(a) – namely, the convenience of the parties, the convenience of the witnesses, and the interests of justice – as well as a variety of private and public interest factors based on their relevancy to and effect on the litigation. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

The public interest factors have included: "the enforceability of the judgment," "practical considerations that could make the trial easy, expeditious, or inexpensive," "the relative administrative difficulty in the two fora resulting from court congestion, "the local interest in deciding local controversies at home," "the public policies of the fora," and "the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* at 879-80. Several private interests include: "plaintiff's forum preference as manifested in the original choice," "the defendant's preference," "whether the claim arose elsewhere," "the convenience of the parties as indicated by their relative physical and financial condition," "the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora," and "the location of books and records." *Id.* at 879. Another factor, most important in this case, is a forum-selection

clause, which "is treated as a manifestation of the parties' preferences as to a convenient forum" and is "entitled to substantial consideration." *Id.* at 880.

"Within this framework, courts should place great weight on valid forum-selection clauses." *Park Inn Int'l*, 105 F. Supp. 2d at 377. "While a valid forum-selection clause is not dispositive, it is entitled to substantial consideration." *Id.* (citations omitted). If a forum-selection clause is valid, the plaintiff bears the burden of "demonstrating why they should not be bound by their contractual choice of forum." *Id.* A forum-selection clause is considered presumptively valid and enforceable unless the party objecting to its enforcement makes a strong showing of unreasonableness. *Cadapult Graphic Sys., Inc. v. Tektronix, Inc.*, 98 F. Supp. 2d 560, 564 (D.N.J. 2000). A party can establish "unreasonableness" only if: (1) "[the clause] is the result of fraud or overreaching," (2) "enforcement would violate a strong public policy of the forum," or (3) "enforcement would . . . result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable." *Id.* at 565 (quoting *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202 (3d Cir.), *cert. denied*, 464 U.S. 938 (1983); *Union Steel Am. Co. v. M/V Sanko Spruce*, 14 F. Supp. 2d 256, 686 (D.N.J. 1998)).

Where a motion to transfer venue is based on a forum-selection clause, the Court must assume the parties' private interests "weigh entirely in favor of the preselected forum." *Atlantic Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 134 S. Ct. 568, 582 (2013). In other words, "the 'interest of justice' is served by holding parties to their bargain." *Id.* at 583. Therefore, the Court cannot consider arguments about the parties' private interests. *Id.* It is inferred that whatever inconvenience the parties would suffer by being required to litigate the matter in the contractual forum as they agreed to do "was clearly foreseeable at the time of contracting." *Id.* As a result, a district court may only consider public interest factors. *Id.* A party seeking to avoid a

forum-selection clause has the burden of establishing that public interests disfavoring the transfer outweigh the parties' choice. *Id.* at 581-82. "Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.* at 582. The Supreme Court has stated:

> When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations. A forum-selection clause, after all, may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place. In all but the most unusual cases, therefore, the interest of justice is served by holding parties to their bargain.

*Id.* at 583.

### III. DECISION

Manopla argues the terms of the Sweepstakes Agreement were unenforceable, and therefore, the forum-selection clause cannot be binding on her. (*See* ECF No. 15 at 2.) According to Manopla, the "hyperlink" to the Sweepstakes Agreement was not conspicuous, because "nothing . . . appear[ed] to be highlighted or hyperlinked, which generally shows as a different text color." (ECF No. 15 at 6.) The only properly marked hyperlink was "at the very bottom of the [] page, buried in five lines of tiny text . . . denoted by the words 'Click Here' in blue text." (*Id.*) Manopla argues

> there is zero indication on [Raymour's] sign-up page that when [a] consumer clicks the box 'I have read and agree to the Official Rules' she is in fact agreeing to a separate eight-page document of rules available through a separate hyperlink buried at the bottom of the page, rather than rules actually listed on the page.

(ECF No. 15 at 7.)

Raymour contends the Sweepstakes Agreement's terms were sufficiently conspicuous to bind Manopla to the forum-selection clause. Raymour argues the first hyperlink was conspicuous

enough because, even though the link was the same color as the text around it on the page, "when a user hovered over the words 'Official Rules*,' the curser changed to an image of a finger," which, according to Raymour, "clearly would have indicated to a reasonably prudent user that the text was a hyperlink to the very document to which she was about to agree." (ECF No. 16 at 6.) The second hyperlink "was in blue font, while the surrounding text was black, and the text of the hyperlink itself stated 'click here.'" (ECF No. 16 at 6.)

The Court finds this action could have been brought in the Northern District of New York and may, therefore, be transferred to that court pursuant to the plain language of 28 U.S.C. § 1404(a). 28 U.S.C. § 1404(a) ("[A] district court may transfer any civil action to any other district or division where it might have been brought . . . ."). Pursuant to 28 U.S.C. § 1391(b)(1), "[a] civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." There is only one defendant in this matter and it is "a corporation organized under the laws of New York with its corporate office [or principal place of business] located at 7230 Morgan Road, Liverpool, New York 13090." (ECF No. 1 ¶ 6 at 2.) Furthermore, there is subject matter jurisdiction under 28 U.S.C. § 1331, because "this action arises under the TCPA [("the Telephone Consumer Protection Act, 47 U.S.C. § 227")], a federal statute." (ECF No. 1 ¶ 8 at 2.)

Manopla has failed to show the forum-selection clause is invalid and that enforcement of the forum-selection clause would be unreasonable or violate public policy. A party can establish "unreasonableness" only if: (1) "[the clause] is the result of fraud or overreaching"; (2) "enforcement would violate a strong public policy"; or (3) "enforcement would . . . result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable." *Cadapult Graphic Sys.*, 98 F. Supp. 2d at 565. Manopla claims the forum-selection clause is unenforceable because

"[Raymour's] website did not make clear that Manopla was agreeing to an extensive 'terms of service' requiring, *inter alia*, Manopla to litigate any grievances she had against Raymour in a foreign jurisdiction far from home." (Manopla's Br. in Opp. (ECF No. 15) at 1.) For the reasons set forth below, this is insufficient to overcome Raymour's Motion to Transfer based on the forum-selection clause.

Manopla contends Raymour's Sweepstakes Agreement "squarely falls into the category of a clickwrap agreement." (ECF No. 15 at 3.) In her brief, Manopla refers to clickwrap as "the assent process by which a user must click "I agree," but not necessarily view the contract to which she is assenting." (ECF No. 15 at 2.) Like any other contract, she argues, the Sweepstakes Agreement "must comport with the rules governing the creation of a contract." (*Id.*) Manopla claims the clickwrap agreement did not provide her with reasonable notice of the forum-selection clause. *See* ECF No. 15 at 6 ("A measured review of the Defendant's sweepstakes sign-up page reflects that there is no indication to a consumer of what they are agreeing to when they check the box 'I have read and agree to the Official Rules.'"). In short, Manopla contests the forum-selection clause within the Sweepstakes Agreement, because she "cannot possibly be bound by such undisclosed terms that she never assented to." (ECF No. 15 at 7.)

Raymour's Sweepstakes Agreement is a clickwrap agreement because it requires a computer user to affirmatively manifest their assent to terms of the contract. *ADP, LLC v. Lynch*, Civ. A. No. 16-1053, 2016 WL 3574328, *4 (D.N.J. June 30, 2016) (citing *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 22 n.4 (2d Cir. 2002) (noting that clickwrap "presents the user with a message on his or her computer screen, requiring that the user manifest his or her assent to the terms of the agreement by clicking on an icon.")). This District has recognized that "[n]umerous courts, including courts in the Third Circuit, have enforced clickwrap agreements." *ADP*, WL

3574328 at *4 (citing *James v. Global Tel\*Link Corp.,* No. 13-4989, 2016 WL 58976 (D.N.J. Feb. 11, 2016)); *see also Syndicate 1245 at Lloyd's v. Walnut Advisory Corp.*, No. 09-1697, 2011 WL 5825979 (D.N.J. Nov. 16, 2011) ("Generally, courts have enforced forum selection clauses in clickwrap agreements, finding that the clickwrap agreement, which collects all of the terms of the agreement in a single dialog box and then requires the user to affirmatively accept the agreement before proceeding, makes every term equally visible."). "That is because clickwrap agreements that incorporate additional terms by reference will generally provide 'reasonable notice' that the additional terms apply." *See ADP*, WL 3574328 at *4.

Manopla argues she did not agree to have her claims litigated in the Northern District of New York. In contracts, "[m]utual assent requires that the parties have an understanding of the terms to which they have agreed." *Atalese v. U.S. Legal Servs. Grp., L.P.,* 99 A.3d 306, 313 (N.J. 2014). Mutual assent "signifies that each party to the contract must have been fairly informed of the contract's terms before entering into the agreement." *Hoffman v. Supplements Togo Mgmt., LLC*, 18 A.3d 210, 216 (N.J. Super. Ct. App. Div. 2011). When "there is reasonable notice, a party is bound by those terms, even if [s]he failed to read them." *Noble v. Samsung Electronics America, Inc*, 682 F. App'x 113, 116 (3d Cir. 2017) (citing *Specht*, 306 F.3d at 30 (applying California's reasonable notice requirement); *Hoffman*, 18 A.3d at 218 (recognizing that California and New Jersey have identical reasonable notice requirements)).

Manopla had reasonable notice of the terms of the Sweepstakes Agreement and is therefore bound by them. *See Noble*, 682 F. App'x at 116. The Third Circuit has found terms to be unenforceable or not "reasonably conspicuous" when "terms are buried in a manner that [give] no hint to a consumer" that a specific clause lies within. *See Noble*, 682 F. App'x at 116 (finding an arbitration clause hidden within a "3.1-inch by 2.4-inch, 143-page document, titled 'Health and

Safety and Warranty Guide'" to be unenforceable). Here, the forum-selection clause was not hidden in such a way that Manopla was without reasonable notice. The application form for the Sweepstakes was one page long and featured two separate links to the Sweepstakes Agreement where the forum-selection clause could be found. (ECF No. 11-1 at 3.) The first hyperlink stated, "I have read and agreed to the Official Rules" and was featured next to a check-box, which a user had to affirmatively click in order to complete the form. (ECF No. 11-1 at 2.) The second hyperlink was featured at the bottom of the form and was signaled by blue ink, telling a user that clicking the words "Click Here" would send a user to a different page containing the Sweepstakes Agreement, and most importantly, the forum-selection clause. (ECF No. 16 at 6.) Because of these two marked hyperlinks, the Sweepstakes Agreement containing the forum-selection clause was reasonably conspicuous—not buried from Manopla's view.

Manopla has not met her burden to show that Raymour's Sweepstakes Agreement, and the forum-selection clause found within, demonstrates "a strong showing of unreasonableness." *Cadapult Graphic Sys.,* 98 F. Supp. 2d at 564 (D.N.J. 2000). Because Manopla has not demonstrated, for the purpose of overcoming the forum-selection clause, that Raymour's interface hid or concealed the Sweepstakes Agreement terms, Raymour's Motion to Transfer Venue to the United States District Court for the Northern District of New York is **GRANTED**.

### IV. CONCLUSION

For the reasons set forth above, Raymour's Motion to Transfer Venue to the United States District Court for the Northern District of New York is **GRANTED**.

Date: June 29, 2018

*/s/Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**